Jean-Paul Ciardullo (CA Bar No. 284170)
email:  jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone:   213.972.4500
Facsimile:   213.486.0065

Jonathan E. Moskin (*pro hac vice*)
email: jmoskin@foley.com
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, NY 10016-1314
Phone: 212-682-7474
Facsimile: 212-687-2329

*Attorneys for Plaintiff*
HERMAN MILLER, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| HERMAN MILLER, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>BLUMENTHAL DISTRIBUTING, INC. d/b/a OFFICE STAR PRODUCTS; JORNG WELL INDUSTRIAL CO., LTD.; NOVA ASIA INT'L INC.; NOVA INNOVATIONS INT'L LTD.; and KING HONG INDUSTRIAL CO., LTD.,<br><br>*Defendants*. | Case No: 2:17-cv-04279 JAK-SP<br><br>**DECLARATION OF JEAN-PAUL CIARDULLO**<br><br>*in Support of*<br><br>**HERMAN MILLER, INC.'s OPPOSITION TO BLUMENTHAL DISTRIBUTING, INC.'s MOTION FOR SUMMARY JUDGMENT**<br><br>**[REDACTED PUBLIC VERSION]** |

I, Jean-Paul Ciardullo, declare as follows:

1. I am an attorney with Foley & Lardner LLP, counsel to Herman Miller, Inc. ("Herman Miller") in this action, and am admitted to practice before the Court.

2. Attached hereto as Exhibit 1 are images of the Caper chair.

3. Attached hereto as Exhibit 2 are images of accused chairs.

4. Attached hereto as Exhibit 3 are true and correct excerpts of the deposition transcript of Richard Blumenthal, taken in this matter on April 5, 2018. The excerpts are being filed UNDER SEAL.

5. Attached hereto as Exhibit 4 are true and correct excerpts of the deposition transcript of Joshua Blumenthal, taken in this matter on April 6, 2018. The excerpts are being filed UNDER SEAL.

6. Attached hereto as Exhibit 5 are true and correct excerpts of the deposition transcript of Fred Rueda, taken in this matter on March 26, 2018. The excerpts being filed UNDER SEAL.

7. Attached hereto as Exhibit 6 are true and correct excerpts of the deposition transcript of Don Smith, taken in this matter on April 5, 2018, The excerpts are being filed UNDER SEAL.

8. Attached hereto as Exhibit 7 are true and correct excerpts of the deposition transcript of King Hong Industrial Co., Ltd. Rule 30(b)(6) witness Jerry Chen, taken in this matter on March 8, 2018. The excerpts are being filed UNDER SEAL.

9. Attached hereto as Exhibit 9 is a true and correct copy of Exhibit 9 to Jerry Chen's deposition. This concern manufacturing costs of accused chairs. Exhibit 9 is being filed UNDER SEAL.

10. Attached hereto as Exhibit 10 is a true and correct copy of Exhibit 10 to Jerry Chen's deposition. This concern manufacturing costs of accused chairs. Exhibit 10 is being filed UNDER SEAL.

11. Attached hereto as Exhibit 11 is a true and correct copy of Exhibit 1 to Don Smith's deposition. Exhibit 11 is being filed UNDER SEAL.

12.     Attached hereto as Exhibit 12 are true and correct copies of Herman Miller/Caper Design Patents.

13.     Attached hereto as Exhibit 13 are true and correct excerpts of the deposition transcript of Lance G. Rake, taken in this matter on June 1, 2018.  The excerpts being filed UNDER SEAL.

14.     Attached hereto as Exhibit 14 are excerpts from the file history for the Caper Trade Dress Application.  The application was substantively examined with respect to functionality and the examiner was satisfied on the issue.  After publication, Office Star filed an opposition, and the proceedings were stayed pending this case.

15.     Attached hereto as Exhibit 157 is an email produced by Office Star in this action.

16.     Attached hereto as Exhibit 158 is an email produced by Office Star in this action.

17.     Attached hereto as Exhibit 159 is an email produced by Office Star in this action.

18.     Attached hereto as Exhibit 162 is an email produced by Office Star in this action.  This is being filed UNDER SEAL.

19.     Attached hereto as Exhibit 163 is an email produced by Office Star in this action.

20.     Attached hereto as Exhibit 163A is an email produced by Office Star in this action.  Exhibit 163A includes the attachment cited on page 2 of Exhibit 163.

21.     Attached hereto as Exhibit 169 is an email produced by Office Star in this action.

22.     Attached hereto as Exhibit 172 is an email produced by Office Star in this action.

23.     Attached hereto as Exhibit 175 is an email produced by Office Star in this action.

24.     Attached hereto as Exhibit 181 is an email produced by Office Star in this

1 action.

2     25.    Attached hereto as Exhibit 182 is an email produced by Office Star in this
3 action.  This is being filed UNDER SEAL.

4     26.    Attached hereto as Exhibit 183 is an email produced by Office Star in this
5 action.

6     27.    Attached hereto as Exhibit 189 is an email produced by Office Star in this
7 action.

8     28.    Attached hereto as Exhibit 190 is an email produced by Office Star in this
9 action.  Images of the 13-77N1P3 and 13-881P3 chairs referenced are attached as
10 Exhibits 227 and 228.  As can be seen, these chairs were recommended because they are
11 not stacking chairs and instead have a five-prong wheeled base.  Note also that the
12 armrests come up from the back.

13     29.    Attached hereto as Exhibit 191 is an email produced by Office Star in this
14 action.

15     30.    Attached hereto as Exhibit 193 is an email produced by Office Star in this
16 action.

17     31.    Attached hereto as Exhibit 194 is an email produced by Office Star in this
18 action.

19     32.    Attached hereto as Exhibit 195 is an email produced by Office Star in this
20 action.

21     33.    Attached hereto as Exhibit 197
22 is an email produced by Office Star in this
23 action.

24     34.    Attached hereto as Exhibit 199
25 is an email produced by Office Star in this
26 action.

27     35.    Shown here is a photo of the
28 upper portion of the rear leg of an Office Star



CIARDULLO DECLARATION
CASE NO. 2:17-cv-04279-JAK-SP

4822-5615-2939.1

872 Series accused chair adjacent to the lateral extension that it fits into. The rod slips into an opening on the underside the lateral extension and is fixed there with a single screw.

36. About five weeks before the discovery cut-off, Office Star served document subpoenas on the third parties. No depositions were sought. Safco initially refused to supply sales data at all. Just days before the close of discovery, MooreCo and OFM provided simplified print outs purporting to show annual sales. Safco waited until almost a month *after* the close of discovery to produce any data (Herman Miller does not know what Office Star said to them to get them to produce).

37. Office Star counsel spoke with me and emailed me before filing their motion to ascertain if Herman Miller was pursuing reasonable royalty, harm to reputation, and corrective advertising damages at trial. I indicated that these would be pursued only to the extent rolled up with disgorgement of Office Star's profits. Office Star did not raise the issue of equitable disgorgement by the Court after trial, nor did I understand their questions to be directed to that as we were focused on the non-disgorgement remedies. The concept of a post-trial equitable disgorgement proceeding was discussed at length during the last lawsuit. I do not think Office Star was trying to ascertain if we would pursue the same approach in this case, but thought it helpful to provide this clarification. In any event, there is no other discovery or analysis required at this point to address equitable disgorgement – it is simply an optional damages avenue that the Court can consider after hearing all of the evidence at trial.

38. The identity of Office Star's customers for accused products had been sought in Herman Miller's July 24, 2017 Requests for Production, but Office Star initially failed to produce the information. Herman Miller initiated procedures under L.R. 37-2 to move to compel, but Office Star ultimately agreed to produce, and provided the data in about March 2018. Combined with deposition testimony from the March 2018 depositions of Office Star witnesses, Herman Miller finally appreciated that Office Star had interfered with its dealer contracts with respect to Caper. In light of this, Herman

Miller alerted Office Star by letter dated April 22, 2018 that it intended to ultimately seek jury instructions on its unfair competition claims that would be based on theories of liability broader in scope than the Lanham Act, and encompassing Office Star's acts of product substitution and interference.

I declare under penalty of perjury that the foregoing is true and correct, and that if called at trial I would testify to the same.

Dated: June 25, 2018                                                                 Jean-Paul Ciardullo